# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**CRYSTAL POOLE,**

     **Plaintiff,**

**v.**                                        **Case No. 8:07-CV-912-EAJ**

**DAVID GEE, Sheriff of Hillsborough**
**County, Florida, in his official capacity; and**
**DONALD KERSH, in his individual capacity**
**as a deputy employed by the Hillsborough**
**County Sheriff's Office,**

     **Defendants.**
_____/

## <u>ORDER</u>

Before the court are **Defendant's, Deputy Donald Kersh, Dispositive Motion for Summary Judgment** (Dkt. 16) and **Plaintiff's Response** (Dkt. 27), Defendant's **Motion for Leave of Court to File DVD in Support of Defendant's, Donald Kersh, Dispositive Motion for Summary Judgment** (Dkt. 15) and **Plaintiff's Response** (Dkt. 25), and **Plaintiff's Motion to Strike as Immaterial Certain Exhibits Filed in Support of "Defendant's, Deputy Donald Kersh, Dispositive Motion for Summary Judgment"** (Dkt. 26) and **Defendant's Response** (Dkt. 28).[1]

Plaintiff Crystal Poole sues Deputy Donald Kersh ("Kersh") for excessive force in violation of her Fourth Amendment rights enforceable under 42 U.S.C. § 1983 ("Section 1983") and David Gee, Sheriff of Hillsborough County, Florida ("the Sheriff") for battery under Section 768.28(b), Florida Statutes ("Section 768.28(b)").  Upon consideration, Kersh's motion for summary judgment

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 9).

is granted.

**I.      Defendant's Motion for Leave of Court to File DVD** (Dkt. 15)

Kersh moves for leave to file in support of his motion for summary judgment Composite

Exhibit C, a DVD that purports to show: Kersh administering field sobriety exercises to Plaintiff;

Kersh placing Plaintiff under arrest for Driving Under the Influence ("DUI"), Child Neglect, and

two counts of Leaving the Scene of an Accident with Property Damage; Kersh's initial attempts to

handcuff Plaintiff and place her in the patrol car; and Plaintiff's actions and statements during these

events.  The DVD ends after Kersh initially placed Plaintiff in the patrol car and does not capture

the subsequent events that comprise Plaintiff's excessive force claim.  By Plaintiff's account,

Kersh's use of force occurred approximately fifteen minutes after the DVD ends.  Plaintiff objects

to the DVD on the grounds that it is probative only as to the existence of probable cause for her

arrest and is immaterial to whether Kersh's use of force was reasonable (Dkt. 16).

Plaintiff's objection to the DVD is overruled.  Kersh asserts qualified immunity as an

affirmative defense to Plaintiff's excessive force claim.   A qualified immunity analysis of an

excessive force claim requires an evaluation of the reasonableness of the force used under the

"totality of the circumstances."  See Draper v. Reynolds, 369 F.3d 1270, 1277 (11th Cir. 2004)

(citation omitted).  The standard is one of objective reasonableness — whether the amount of force

used by the officer was objectively reasonable in light of the facts confronting the officer on the

scene. Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002) (citations omitted).

In Draper, the Eleventh Circuit viewed a videotape from a patrol car camera that recorded

the officer's and the defendant's speech and actions during a traffic stop, which culminated in the

officer using a taser gun on the defendant to effectuate his arrest.  369 F.3d at 1272-74.  The court

considered the police video objective evidence of the circumstances known to the arresting officer during the traffic stop.  In concluding that the officer's use of force was reasonable under the totality of the circumstances, the court specifically noted that "a verbal arrest command attempted by physical handcuffing, in these particular factual circumstances, may well have . . . escalated a tense and difficult situation into a serious physical struggle." Id. at 1278.

Contrary to Plaintiff's argument, the events captured on the DVD are material to her excessive force claim because they give a clear picture of the circumstances and facts known to Kersh at the scene of the arrest. Like the police video in Draper, the DVD is objective evidence of both Plaintiff's and Kersh's actions during Plaintiff's arrest.  No party disputes that Kersh's use of force occurred during the continuation of the same arrest.  Therefore, the events captured on the DVD are material to whether Kersh's use of force was reasonable under the totality of the circumstances known to him at the scene.  Defendant's Motion for Leave of Court to File DVD (Dkt. 15) is granted.

## II.  Plaintiff's Motion to Strike as Immaterial Certain Exhibits (Dkt. 26)[2]

Plaintiff objects to all or part of Kersh's Exhibits B, C, D, I, J, K, N, and O.  Plaintiff does not challenge the documents on authenticity or hearsay grounds; Plaintiff objects only on the basis that the exhibits are immaterial (or irrelevant) to her excessive force claim.

---

[2] "To properly challenge the admissibility of evidence submitted in support of a summary judgment motion, a party should object rather than move to strike." Wells v. Xpedx, No. 8:05-CV-2193-T-EAJ, 2007 WL 2696566, *1 (M.D. Fla. Sept. 11, 2007) (citation omitted). Rule 12(f), Federal Rules of Civil Procedure, under which Plaintiff moves to strike some of Kersh's exhibits, is reserved for pleadings. Fed. R. Civ. P. 12(f). An exhibit attached to a motion for summary judgment is not a pleading. Riviera S. Apartments, Inc. v. QBE Ins. Corp., No. 07-60934-CIV, 2007 WL 2506682, *1 (S.D. Fla. Aug. 30, 2007) (citation omitted).  Accordingly, Plaintiff's motion is construed as objections to evidence submitted by Kersh in support of his summary judgment motion.

Plaintiff's objections to Exhibits B, C, and I are overruled. Exhibit B is a May 7, 2003 Florida Traffic Crash Report authored by Deputy T. Craig.  Exhibit C and the allegedly objectionable portion of Exhibit I are both the same document — the Hillsborough County Sheriff's Office May 7, 2003 DUI report authored by Kersh (the arresting officer) and supplemented by Deputy Jolyn Walker ("Walker") (another officer who was called to the scene for assistance).

Undisputed is that Kersh was called to investigate Plaintiff for DUI as a result of Plaintiff's alleged involvement in a hit-and-run traffic crash. As discussed in Part V, infra, the severity of the defendant's crime is relevant in determining whether an officer's use of force was reasonable under the totality of the circumstances. Graham v. Connor, 490 U.S.  386, 396 (1989) (citation omitted). Both the traffic crash and DUI reports are material to the severity of the crimes Plaintiff had allegedly committed on May 7, 2003 and material to Kersh's knowledge of that information under the circumstances leading to his use of force.

Exhibit D is a transcript of Composite Exhibit C, the DVD discussed in Part I, supra. Plaintiff states that the transcript is immaterial for the same reasons that the DVD is immaterial. Plaintiff challenges only the relevancy of the transcript.  Plaintiff's objection is overruled; the transcript is admissible for the same reasons the DVD is admissible as discussed in Part I, supra. See also Draper, 369 F.3d 1273 n.4 (referring to a transcript of the conversation between the officer and the defendant captured by the officer's police video camera).

Exhibit J, a Hillsborough County Sheriff's Office Charge Report, reflects that Plaintiff was arrested and booked on May 7, 2003 for Aggravated Child Abuse, DUI, Leaving the Scene of a Crash, and Refusal to Submit to Testing.  Plaintiff's objection is overruled as the report reflects the seriousness of the crimes with which Plaintiff was charged and the seriousness of the crimes is

relevant to whether Kersh's use of force was excessive under the totality of the circumstances.

Exhibit K is a certified copy of Plaintiff's judgment and sentence received as a result of the May 7, 2003 charges. Plaintiff's objection is sustained. The exhibit is immaterial to whether Kersh's use of force was reasonable under the circumstances known to him at the time of Plaintiff's arrest.

Plaintiff also contends that Exhibit N, an incident report related to Plaintiff's November 15, 2000 arrest for DUI, is irrelevant because it is unrelated to this case. Kersh responds that the exhibit is relevant to show that on May 7, 2003 Plaintiff was familiar with the arrest process (and specifically the DUI arrest process). However, the exhibit reflects that Plaintiff was arrested on a warrant for worthless checks, not DUI, on November 15, 2000. Further, the record does not show that Kersh had knowledge of a Plaintiff's prior arrest during the May 7, 2003 arrest. Because the record is devoid of such facts, Plaintiff's November 15, 2000 arrest is irrelevant to the circumstances surrounding the use of force in this case and her objection is sustained.

Lastly, Plaintiff objects to Exhibit O, a September 23, 2005 report of a slip-and-fall that Plaintiff sustained, as unrelated to her excessive force claim. Although the report may be relevant for damages purposes or impeachment at trial, it is immaterial to whether Kersh's use of force on May 7, 2003 constituted a Fourth Amendment violation. Plaintiff's objection is sustained.

Accordingly, Plaintiff's Motion to Strike is granted to the extent her objections to Exhibits K, N, and O are sustained. The Motion to Strike is otherwise denied.[3]

III. **Background**[4]

---

[3] Even if the court struck every exhibit challenged by Plaintiff (including the DVD), Plaintiff's best case would still fail to show that Kersh's use of force amounted to a constitutional violation. See Part V, infra.

[4] The background facts are record undisputed facts unless otherwise stated.

On the afternoon of May 7, 2003, Plaintiff was driving with her two-year-old daughter in the car and accidentally hit at least one parked vehicle, causing property damage. (Poole Dep. 47:12-48:21, Dec. 20, 2007) After observing Plaintiff's accident, at least one witness followed Plaintiff's vehicle and reported her to the authorities.  (Dkt. 16, Exs. B, C)  Plaintiff stopped at a convenience store to buy cigarettes, where she was met by Sheriff's Deputy W. Blake who questioned Plaintiff about her involvement in a car accident (Dkt. 16, Ex. C; Poole Dep. 48:22-49:5)  Kersh, a deputy on the DUI unit, was dispatched to the convenience store to investigate Plaintiff for driving under the influence.  (Kersh Dep. 4:9-18, Apr. 9, 2008)

When he arrived, Kersh observed "a lot of activity in the parking lot" and learned from other law enforcement officers on the scene that Plaintiff had been involved in a hit-and-run traffic accident. (Kersh Dep. 5:23-6:11) Kersh saw Plaintiff seated in her car, holding her daughter, and advised Plaintiff that he was there to conduct a DUI investigation. (Kersh Dep. 7:2-24) Kersh noted the smell of alcohol on Plaintiff's breath and advised her of her *Miranda* rights.  (Dkt. 16, Ex. C; Kersh Dep. 7:25-8:9)  Plaintiff denied consuming alcohol but told Kersh that she had twice that day taken doctor-prescribed Xanax and was also on morphine because she had just been released from Moffitt Cancer Center. (Dkt. 16, Exs. C, D)  Kersh asked Plaintiff to cooperate in performing field sobriety exercises. After administering the exercises, Kersh informed Plaintiff that he believed her to be impaired based on her involvement in a hit-and-run traffic crash, her post-*Miranda* admission to taking Xanax and morphine, and her performance on the field sobriety exercises. (Id.; Kersh Dep. 11:22-12:1)  Kersh advised Plaintiff that she was under arrest for DUI and asked her to turn around so Kersh could handcuff her.

Plaintiff repeatedly stated "are you kidding me," "that's ridiculous," and maintained that she

had passed the field sobriety exercises. (Dkt. 16, Exs. C, D) Plaintiff also demanded to see her daughter; Kersh advised Plaintiff several times to "relax" and "settle down." (Id.)  Two other deputies on the scene quickly came over to assist Kersh with handcuffing Plaintiff.  (Dkt. 16, Ex. C; Kersh Dep. 12:1-13:2)  As Kersh was trying to direct Plaintiff to the backseat of the patrol car, one deputy asked Plaintiff for her mother's phone number so someone could contact Plaintiff's mother about picking up the child. (Dkt. 16, Exs. C, D) Again Plaintiff demanded to see her daughter and told the deputies, "No, you're not taking her." (Id.)   Kersh ordered Plaintiff no fewer than five times to "have a seat" or "sit down" in the backseat of the patrol car.  (Id.)  Plaintiff told Kersh twice to "shut up" and called the deputies "fucking assholes" as Kersh and the other deputies placed Plaintiff in the back of the patrol car.[5] (Id.) Plaintiff admits that she was argumentative with the deputies "at the point [she] was arrested." (Poole Dep. 52:10-13)

Deputy Walker arrived on the scene to wait with Plaintiff's daughter until Plaintiff's mother could arrive and take custody of the child. (Walker Dep. 4:2-21, Apr. 9, 2008) Walker initially observed that Plaintiff was "argumentative" and "disagreed with pretty much everything [Kersh] said."  (Walker Dep. 11:16-22)  When Plaintiff's mother arrived on the scene, Plaintiff (who was sitting handcuffed in the backseat of Kersh's patrol car) by her own admission became "hysterical." (Poole Dep. 54:11-20)  Walker observed Plaintiff "yelling" while Plaintiff was sitting in the back of Kersh's patrol car. (Walker Dep. 17:12-22) Kersh asked Plaintiff several times to "be quiet" but Plaintiff did not stop talking.  (Poole Dep. 55:3-6)  According to Kersh, Plaintiff at some point removed her left hand from the handcuffs (leaving her left hand free and her right hand still in the

---

[5]  At this point, Plaintiff was handcuffed and secured in the backseat of Kersh's patrol car and Kersh stopped the police video camera that had recorded Kersh's investigation and arrest of Plaintiff. (Kersh Dep. 13:3-6; Dkt. 16, Exs. C, D)

handcuffs) and started "swinging [the handcuffs] around in the car, banging it off of the cage and the windows." (Dkt. 16, Exs. C, G, I; Kersh Dep. 15:9-16:3; Walker Dep. 9:2-14, 14:25-15:5) Plaintiff testified in her deposition that she did not remove one or both of the handcuffs and stated, "that would have been impossible." (Poole Dep. 54:7-10)

Kersh advised Sergeant Gordon Brown ("Brown"), who had responded to the scene as a backup unit, that Kersh was taking Plaintiff out of the patrol car because "she had come out of her handcuffs" and needed to be re-handcuffed. (Dkt. 16, Ex. G at ¶¶ 4, 6) Kersh opened the door to the backseat of the car and "pulled [Plaintiff] out" of the car.[6] (Poole Dep. 55:3-6, 55:25-56:7) Plaintiff admitted to probably saying "some derogatory words" at Kersh; Kersh's tone toward Plaintiff was rude but not derogatory. (Poole Dep. 55:11-19) Walker, who was with Plaintiff's two-year-old daughter, heard a "verbal commotion" that included Kersh telling Plaintiff to "stop." Walker turned to look at Kersh and Plaintiff and saw both of them outside the patrol car. (Walker Dep. 6:20-7:11, 14:7-15)

Plaintiff did not try to attack Kersh with the loose handcuff. (Kersh Dep. 19:3-6) As Kersh tried to re-handcuff Plaintiff, she began twisting her body violently, flailing her arms, and taking steps away from Kersh, who had hold of only one of Plaintiff's arms. (Kersh Dep. 19:7-19; Dkt. 16, Ex. C, Ex. G at ¶ 6) According to Kersh, the two were effectively "dancing in circles" or "walking in a circular path" while Kersh was trying to re-handcuff Plaintiff. (Kersh Dep. 20:25-21:7, 21:11-

---

[6] Although Kersh testified that Plaintiff stepped out of the car voluntarily upon Kersh's request (and Plaintiff appears to adopt Kersh's version of this fact in her opposing papers), this fact is immaterial when viewing the record as a whole. See Scott, 127 S. Ct. at 1776 (citation omitted) ("[T]he mere existence of *some* alleged factual dispute . . . will not defeat and otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

20; Dkt. 16, Ex. G at ¶ 6)  In her deposition, Plaintiff denied struggling with Kersh but stated that she had no recollection of what happened once she "hit the ground." (Poole Dep. 55:9-10, 56:2-15)

Kersh took Plaintiff by the left hand and redirected her to the ground face-down on her chest, using a "three-point pin" (a standard, non-pain compliance maneuver that stops any movement from the suspect) to re-handcuff Plaintiff. (Kersh Dep. 23:14-19, 24:9-16, 24:20-25:2; Dkt. 16, Ex. G at ¶ 6) Plaintiff testified that Kersh "knocked [her] to the ground" because Kersh was agitated with her.[7] (Poole Dep. 55:3-8, 60:17-21)

Walker walked over to the car to "see what was going on" or if Kersh needed help.  Walker observed that Kersh had Plaintiff face down on the ground and was "just kind of fighting with her, trying to get her arm around and put the handcuff on her." Walker noticed that one of Plaintiff's arms was handcuffed and the other was not and observed Plaintiff "pull away from [Kersh] numerous times, trying to pull away, as he was trying to cuff her other hand." Walker saw Kersh secure Plaintiff's free hand in the handcuffs. (Walker Dep. 7:19-23, 8:12-16, 8:24-9:14, 10:10-18, 14:25-15:5) When Walker asked Kersh what happened, he replied that Plaintiff had gotten out of the handcuffs, was "swinging them around" in the backseat, and would not cooperate when he took her out of the car to re-handcuff her. (Walker Dep. 9:15-10:6)

As he re-handcuffed Plaintiff, Kersh noticed that blood was coming from Plaintiff's face. (Kersh Dep. 24:17-19) Plaintiff had an L-shaped cut on her forehead and had lost a tooth. (Kersh Dep. 30:23-31:3) Kersh summoned emergency medical services ("EMS") to examine and treat Plaintiff. (Kersh Dep. 30:4-10)  EMS examined and treated Plaintiff but was unable to record Plaintiff's vital signs and personal information because Plaintiff was uncooperative with, struggling

---

[7] This allegation forms the basis of Plaintiff's excessive force claim.

with, and "spitting [at]" EMS personnel during the examination (Dkt. 16, Ex. H).  After EMS determined that Plaintiff did not need to go to the hospital for further treatment, Kersh returned Plaintiff to the patrol car and took her to booking.  (Kersh Dep. 31:4-14)

**IV.**   **Legal Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the movant has met this burden, the nonmoving party must identify specific facts that raise a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e).

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)). In considering a summary judgment motion, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

The court must judge all evidence in the light most favorable to the nonmoving party and must draw all justifiable inferences in the nonmoving party's favor. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990) (citations omitted). However, the evidence must also be viewed in light of the evidentiary burden of the respective parties under the substantive law of

the case. Id. (citing Anderson, 477 U.S. at 248). If a reasonable jury could find for the nonmoving

party, summary judgment is inappropriate. Id. (citing Celotex, 477 U.S. at 324).

## V.      Discussion

Because Section 1983 grants no substantive right but provides only "a method for vindicating

federal rights elsewhere conferred," a Section 1983 claim requires the deprivation of a specific

federal right.  Albright v. Oliver, 510 U.S. 266, 271 (1994).  The Fourth Amendment's protection

against unreasonable seizure guards against an arrest without probable cause and the use of

excessive force during an arrest.  Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004)

(citation omitted). Plaintiff concedes that her arrest was lawful; her only claim against Kersh is for

excessive force. Kersh contends that qualified immunity entitles him to summary judgment.

### A.      Qualified Immunity

Qualified immunity permits a government official to perform a discretionary duty "without

the fear of personal liability or harassing litigation" and protects from suit "all but the plainly

incompetent." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal quotation marks

and citation omitted).  Qualified immunity protects only those government officials acting within

the scope of their discretionary authority when the allegedly wrongful acts occurred. Kesinger v.

Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (citations omitted).  No party disputes that Kersh

was acting within the scope of his discretionary authority as a Sheriff's deputy when the events in

question occurred.  Thus, Plaintiff bears the burden of overcoming the qualified immunity defense.

Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007).

Evaluating a qualified immunity defense requires the court to ascertain first whether the

facts, taken in the light most favorable to the plaintiff, establish a specific constitutional violation.

11

Saucier v. Katz, 533 U.S. 194, 201 (2001).[8]  "If, and only if, the court finds a violation of a constitutional right" does the court then analyze whether the right was "clearly established" at the time of the violation. Scott v. Harris, 127 S. Ct. 1769, 1774 (2007) (quoting Saucier).

> In analyzing whether qualified immunity applies, the Eleventh Circuit has instructed:
>
> When conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury.  When a district court considers the record in this light, it eliminates all issues of fact. By approaching the record in this way, the court has the plaintiff's best case before it. With the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without having to assess any facts in dispute. Thus . . . material issues of disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity.

Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005) (citation omitted).

Consistent with the Fourth Amendment, law enforcement officers are entitled to use reasonable force to execute a lawful arrest.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396-97 (holding that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it").  Indeed, it is well-settled that "[s]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003).  "The question is whether the officer's conduct is objectively

---

[8] On March 24, 2008, the United States Supreme Court granted the petition for a writ of certiorari in Callahan v. Millard County, 494 F.3d 891 (10th Cir. 2007), cert. granted, Pearson v. Callahan, ___ S. Ct. ___, 76 U.S.L.W. 3316, 2008 WL 754340, *1 (U.S. Mar. 24, 2008) (No. 07-751).  In addition to the Fourth Amendment questions presented by the petition, the Court directed the parties to brief and argue the following question: "Whether the Court's decision in Saucier v. Katz, 533 U.S. 194 (2001) should be overruled?"  Notwithstanding, Saucier remains controlling authority in analyzing Kersh's qualified immunity defense.

reasonable in light of the facts confronting the officer." <u>Vinyard</u>, 311 F.3d at 1347 (citations omitted).  Simply, "[t]hough the facts must be taken in the light most favorable to [the plaintiff], the determination of reasonableness must be made from the perspective of the officer." <u>Robinson</u>, 415 F.3d at 1255.

This "calculus of reasonableness" must allow "for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 396-97.  The determination of whether an officer's use of force was reasonable requires examination of: (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted.  <u>Draper</u>, 369 F.3d at 1277-78 (citations omitted). The need for force must be measured within the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  <u>Id.</u> at 1278 n.13 (citation omitted); <u>Graham</u>, 490 U.S. at 396.

Under the undisputed facts and circumstances facing Kersh on May 7, 2003, Kersh believed he had probable cause to arrest Plaintiff at least for leaving the scene of a crash with property damage and DUI.[9]  "Generally, more force is appropriate for a more serious offense and less force is appropriate for a less serious one." <u>Vinyard</u>, 311 F.3d at 1347 (citations omitted). Although the

---

[9] Plaintiff has never asserted that her arrest was unsupported by arguable probable cause (Dkt. 27, at 2 n. 2).  Further, though Plaintiff was also charged with aggravated child abuse and refusal to submit to testing, it is unclear whether Kersh believed he had probable cause to charge these crimes during the incident upon which Plaintiff's excessive force claim is based.

charges are misdemeanors, it cannot be said that Plaintiff's crimes were "insignificant." Cf. Lee v. Ferraro, 284 F.3d 1188, 1198-99 (11th Cir. 2002) (discussing the insignificance of a noise ordinance violation for which the plaintiff was arrested).  Even assuming this factor weighs slightly in favor of Plaintiff, however, there is no genuine factual dispute about whether Plaintiff posed a threat to Kersh's safety and was actively resisting arrest before Kersh exerted force.

Admittedly, Plaintiff had been argumentative with Kersh and the other deputies upon her arrest for DUI and while sitting in the back of Kersh's patrol car.  The assistance of two additional officers was required to initially handcuff Plaintiff and place her in Kersh's patrol car. While sitting handcuffed in the backseat, Plaintiff by her own admission was "hysterical" and wanted to talk with her mother. (Poole Dep. 54:11-20)

The unanimous testimony of Kersh and the other eyewitnesses, as well as the written reports from the arrest, demonstrates that Plaintiff removed her left hand from the handcuffs and was not fully secured when she and Kersh exited the patrol car.  Plaintiff's deposition testimony is the only record evidence that she remained fully secured in the handcuffs for the duration of the arrest and, if accepted, is the version of the facts most favorable to her. However, Plaintiff's testimony is directly contradicted by all other record evidence, including: the Assailant Control Report (Dkt. 16, Ex. I), which notes that Plaintiff admitted to removing the handcuff "so that she could roll down the window and speak with her mom about her daughter"; the Brown Affidavit (Dkt. 16, Ex. G), and the testimony of Walker, who watched Kersh re-handcuff Plaintiff.  (Walker Dep. 14:25-15:5)

To carry her burden under Rule 56(c), Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Scott, 127 S. Ct. at 1776 (internal quotation marks and citation omitted).  "When opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. Plaintiff's contention that she always remained fully handcuffed is "blatantly contradicted by the record, so that no reasonable jury could believe it." Id.; see also Kesinger, 381 F.3d at 1249-50 (rejecting the only testimony favorable to the plaintiff in analyzing a qualified immunity defense because the testimony was in direct conflict with the record and was inconsistent with the witness' initial written statements to police).[10] Moreover, though Plaintiff points to her testimony to counter Kersh's claim that Plaintiff partially freed herself from the handcuffs, Plaintiff's response implicitly concedes that her left hand was indeed unrestrained.  Plaintiff states in her response under "Summary of the Facts" that "[t]he sole reason that Kersh took Poole to the ground was that she refused to place both hands behind her back simultaneously, to provide sufficient time for Kersh to open the left handcuff, reapply it to Poole's left hand, and double-lock it again." (Dkt. 27 at 11) Plaintiff thus appears to concede, for summary judgment purposes, that she did not remain fully secured in the handcuffs at all times.

Likewise, the record is laden with evidence that Plaintiff resisted Kersh's attempts to re-handcuff her after the two exited the vehicle.  (Kersh Dep. 19:7-19; Dkt. 16, Ex. C, Ex. G at ¶ 6, Ex. H; Walker Dep. 8:12-16, 10:10-18)  Plaintiff, though admitting that she would not stop talking and

---

[10] Because qualified immunity cases often involve credibility determinations, a tension tends to exist between accepting the plaintiff's version of the facts as true while concurrently recognizing the parties' evidentiary burden on summary judgment.  The court recognizes that credibility issues are for the jury and the evidence is not to be weighed at the summary judgment stage, yet the Supreme Court and the Eleventh Circuit have approved the grant of summary judgment on qualified immunity grounds where the conflict in the evidence does not rise to the level of a "genuine" dispute. Scott, 127 S. Ct. at 1776; Kesinger, 381 F.3d at 1249-50. That is simply what the court is doing in this case, because the court must resolve all factual issues in Plaintiff's favor but in doing so cannot ignore Plaintiff's evidentiary burden on summary judgment.

was "hysterical" while sitting in the patrol car, in her deposition testimony denied "struggling with" Kersh at any time during the arrest.  (Poole Dep. 54:16-20, 55:4-14)  But when Plaintiff was questioned about what happened after Kersh pulled Plaintiff from the car, Plaintiff responded: "I don't have any recollection after that because once I hit the ground, I was unconscious.  I recall waking up with people standing over me." (Poole Dep. 55:9-10, 56:5-14) Although Plaintiff has no recollection of the events outside the patrol car other than being "knocked to the ground," she also offers no evidence to rebut Kersh's evidence that Plaintiff would not cooperate with him and that Kersh tried to re-handcuff her without force.

On summary judgment, the court must view the facts "in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts." Scott, 127 S. Ct. at 1776 (citation omitted). "A mere scintilla of evidence in support of the non-movant is insufficient to defeat a motion for summary judgment." Kesinger, 381 F.3d at 1249-50.  Viewing the record as a whole, Plaintiff's version of the disputed, material facts is insufficient to raise a genuine issue as to whether she resisted Kersh's attempts to re-handcuff her.  Even accepting her testimony as true, no reasonable jury could find for Plaintiff on that fact. See Scott, 127 S. Ct. at 1776.

Most importantly, Plaintiff states in her opposing papers that "the sole reason that Kersh took [Plaintiff] to the ground was that she refused to place both hands behind her back simultaneously, to provide sufficient time for Kersh to open the left handcuff, reapply it to Poole's left hand, and double-lock it again" and that "[t]he extent of her resistance was 'dancing around' in a circle." (Dkt. 27 at 11, 18). Thus, Plaintiff appears to concede for summary judgment purposes that she resisted Kersh's attempts to re-handcuff her.

As for whether Kersh's exertion of force was necessary, the record shows that Plaintiff posed

an immediate threat to Kersh's safety once she began resisting Kersh's attempts to re-handcuff her. Though he knew that an unsecured handcuff meant Plaintiff was "armed, and . . . dangerous," Kersh initially believed that he "could handle [Plaintiff] without any trouble." (Kersh Dep. 17:19-18:6) However, once Plaintiff resisted Kersh by "refus[ing] to place both hands behind her back simultaneously" and  "dancing around in circles," (Dkt. 27 at 11, 18), the situation changed in a split-second.

Both Kersh and Walker stated that a loose handcuff on an arrestee means "a weapon" and that they have seen suspects use them used to hurt deputies. (Walker Dep. 16:8-11; Kersh Dep. 17:16-24) Brown, who had a clear view of the incident, was equally concerned that Plaintiff might attempt to hit Kersh with the loose handcuff. (Dkt. 16, Ex. G at ¶ 6).  When Plaintiff began to resist Kersh's attempts to re-handcuff her, Kersh had reason to be concerned about Plaintiff's loose handcuff being a threat to his safety. (Kersh Dep. 17:16-18:6) Kersh had not called for another officer to assist him in re-handcuffing Plaintiff because he thought "that [he] would be fine with her." (Kersh Dep. 17:25-18:6) Plaintiff's resistance forced Kersh to make a split-second decision in rapidly evolving circumstances in light of the facts confronting him at the time.  Based on Kersh's knowledge of the circumstances at that point, including Plaintiff's behavior during the initial arrest and her (admitted) hysteria in the backseat of the patrol car, it was not objectively unreasonable for Kersh to believe that the application of some degree of force was required to subdue Plaintiff.

Similarly, the relationship between the need for force and the amount of force used weighs in Kersh's favor. "[T]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force." Vinyard, 311 F.3d at 1347.  "The Eleventh Circuit has repeatedly found that the use of force involving some measure of rough contact during an arrest may

be appropriate."  Anderson v. City of Tampa, 555 F. Supp. 2d 1268, 1274 (M.D. Fla. 2008) (citations omitted).  Accordingly, law enforcement officers "generally enjoy[] qualified immunity with respect to force used on an arrestee before the arrestee is fully secured." Id.

Nothing indicates that the force used by Kersh was disproportionate to the need for force. Plaintiff's dangling handcuff left her unsecured; her resistance turned the dangling handcuff into a safety threat to Kersh.  Brown, who had a clear view of the incident, states that Kersh's "take down" maneuver was appropriate and "textbook." (Dkt. 16, Ex. G at ¶ 7) Although Plaintiff recalls that Kersh "knocked [her] to the ground," Plaintiff offers no evidence that Kersh slammed, kicked, punched, or otherwise struck her. (Walker Dep. 15:6-16; Dkt. 16, Ex. G at ¶ 6) No evidence exists that Kersh applied any other force other than the "take down" or that Kersh applied any further force once Plaintiff was re-handcuffed. Cf. Anderson, 555 F. Supp. 2d at 1274. The record indicates that the force used, while unfortunately causing injury to Plaintiff, was reasonable under the circumstances.  (Dkt. 16, Ex. G at ¶ 7; Kersh Dep. 23:7-23); see also Owens v. Christian, No. 3:07-0021, 2008 WL 217118, *8 (M.D. Tenn. Jan. 23, 2008) (reasoning that a maneuver used by the arresting officer to place the plaintiff on the ground was standard procedure, particularly because the plaintiff was partially handcuffed and had the potential to use the handcuffs as a weapon against the officer). Thus, a reasonable officer faced with the same situation as Kersh could "believe that this level of force [was] necessary in the situation at hand."  Lee, 284 F.3d at 1197 (internal quotation marks and citation omitted).  Moreover, even if the amount of force used could be viewed in hindsight as unnecessary, it was lawful under the rapidly evolving circumstances. Cf. Durruthy, 351 F.3d at 1094 (forcing the plaintiff to the ground may have ultimately been unnecessary but was not unlawful).

18

The injuries of which Plaintiff complains are a wound to her forehead, the loss of two bottom

teeth, a deflated right breast implant, bruising, and two seizures: one seizure suffered at the jail and

another approximately one month after the incident. (Dkt. 16, Ex. M; Poole Dep. 35:1-8)  However,

the evidence does not reflect an injury to Plaintiff's right breast implant as a result of the use of force

(Dkt. 16, Ex. A).  At best, the record reveals that the incident may have aggravated a pre-existing

condition with her breast implant. (Id.)  However, the aggravation of a pre-existing condition "does

not turn reasonable force into excessive force." Anderson, 555 F. Supp. 2d at 1274-75; see Durruthy,

351 F.3d at 1095 n.10 (noting that reasonable force does not become excessive when an unknown

pre-existing condition is aggravated by the use of force).  Likewise, nothing in the record supports

Plaintiff's claim that she suffered two seizures.  Even assuming she did, no evidence exists that

Kersh's use of force caused the seizures.

As for the forehead wound and loss of teeth, Kersh noticed these injuries immediately after

re-handcuffing Plaintiff and summoned EMS. (Dkt. 16, Ex. C; Kersh Dep. 30:10, 30:23-31:3)

Plaintiff was bleeding from both her forehead and her mouth. (Kersh Dep. 30:23-31:3, 31:25-32:3)

EMS determined that Plaintiff did not need to go to the hospital for her injuries, treated her on the

scene, and released her to Kersh.[11] (Kersh Dep. 31:4-14) Once at the jail, Plaintiff was attended by

the nurse in booking who closed Plaintiff's forehead wound with three sutures. (Kersh Dep. 31:15:-

21; Poole Dep. 57:15-58:1; Dkt. 27, Ex. A at 4) Medical records from the jail note Plaintiff's

sutures, lost teeth, swelling to her knee, and generally record Plaintiff's complaints of pain,

numbness, and bruising (Dkt. 27, Ex. A).  Plaintiff's head laceration and lost teeth can be considered

---

[11] Plaintiff does not recall being treated by EMS at the scene. (Poole Dep. 56:19-57:6) The
EMS report notes that Plaintiff was uncooperative with, struggling with, and "spitting [at]" EMS
personnel during Plaintiff's examination (Dkt. 16, Ex. H).

more than de minimus injuries. <u>Cf.</u> <u>McReynolds v. Ala. Dept. of Youth Svcs.</u>, 204 F. App'x 819, 822 (11th Cir. 2006) (laceration to the head requiring eleven stitches severe enough to overcome low standard of showing more than de minimus injury).  On balance, this factor weighs in Plaintiff's favor but is only one factor for consideration under the totality of the circumstances.

Most importantly, the Eleventh Circuit has consistently granted qualified immunity to officers who use force before an arrestee is fully secured in handcuffs.  <u>See, e.g.</u>, <u>Crosby</u>, 394 F.3d at 1334; <u>Durruthy</u>, 351 F.3d at 1094; <u>see also</u> <u>Galvez v. Bruce</u>, No. 8:06-CV-2176-T-27MSS, 2008 WL 186580, *5 (M.D. Fla. Jan. 18, 2008) (citations omitted).  Plaintiff contends that even under Kersh's version of the facts, the force used was excessive because Plaintiff's "circumstances were equivalent to a handcuffed arrestee." (Dkt. 27 at 19)  But the cases Plaintiff cites in support of her position are distinguishable because in those cases the arrestee was clearly handcuffed and secured before the officer exerted force.  <u>See</u> <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1330 (11th Cir. 2008) (denying qualified immunity where officer "punched [plaintiff] in the stomach while he was handcuffed and not struggling or resisting"); <u>Davis v. Williams</u>, 451 F.3d 759, 767 (11th Cir. 2006) (denying qualified immunity where the use of force occurred after the "compliant [plaintiff] was already in handcuffs"); <u>Vinyard</u>, 311 F.3d at 1349 (denying qualified immunity because the plaintiff was "arrested, secured, and handcuffed" before the use of force); <u>Lee</u>, 284 F.3d at 1198 (same).

Viewing the facts in the light most favorable to Plaintiff, no reasonable jury could find that Kersh's use of force under the totality of the circumstances was so objectively unreasonable as to violate the Fourth Amendment. Because Plaintiff has failed to establish that a constitutional deprivation occurred, the court need not reach whether the law was clearly established under the second prong of <u>Saucier</u>. <u>Scott</u>, 127 S. Ct. at 1774.  Kersh is therefore entitled to summary judgment

20

on Plaintiff's Section 1983 claim.

    **B.**    <u>**Liability of the Sheriff**</u>

Count II of Plaintiff's Complaint brings a battery claim under state law against only the Sheriff.  The Sheriff has not moved for summary judgment on this count.

Under Florida law, an officer's use of excessive force during a lawful arrest can transform "ordinarily protected use of force . . . into a battery." <u>Davis</u>, 451 F.3d at 768 (citation omitted).  "A battery consists of the intentional infliction of a harmful or offensive contact upon the person of another." <u>Lau v. Miller</u>, No. 96-1219-CIV-ORL-22B, 1999 WL 34803669, *7 (M.D. Fla. Sept. 16, 1999) (internal quotation marks and citations omitted).  However, an officer's use of force may constitute a battery only if the force used is excessive; if the officer used reasonable force in effectuating an arrest, the battery claim cannot stand. <u>Id.</u>  Because Plaintiff has failed to establish that Kersh's use of force was unreasonable under the circumstances, Plaintiff's battery claim against the Sheriff must fail under Florida law. <u>See</u> <u>also</u> <u>Sullivan v. City of Pembroke Pines</u>, 161 F. App'x 906,  911 (11th Cir. 2006);  <u>Secondo v. Campbell</u>, No. 4:07-CV-104-SPM/WS, 2008 WL 919718, *6 (N.D. Fla. Apr. 4, 2008).  Count II is therefore dismissed with prejudice.

**VI.**    <u>**Conclusion**</u>

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)     Defendants' Motion for Leave of Court to File DVD (Dkt. 15) is **GRANTED**;

(2)    Plaintiff's Motion to Strike as Immaterial Certain Exhibits (Dkt. 26) is **GRANTED** to the extent that her objections to Exhibits K, N, and O are sustained;

(3)    Defendant's, Deputy Donald Kersh, Dispositive Motion for Summary Judgment (Dkt. 16) is **GRANTED**;

(4)     Plaintiff's state law claim for battery against the Sheriff is **DISMISSED** with prejudice;

(5)     the Clerk is directed to enter judgment for Defendants, terminate all pending motions, and

close this case.

**DONE AND ORDERED** in Tampa, Florida on this 8th day of August, 2008.


ELIZABETH A JENKINS

United States Magistrate Judge